IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terry Beaver,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____ | Civil Action No. 2:12-01810-MGL-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The Plaintiff, Terry Beaver, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

  The plaintiff was 47 years old on his alleged disability onset date of July 1, 2008. (R. at 17, 21.) He alleged disability due to limited use of his left hand, as the result of a stroke, and a seizure disorder. (R. at 17, 149.) The plaintiff did not graduate from high school; at the hearing before the Administrative Law Judge ("ALJ"), the plaintiff testified that he stopped attending school after the tenth grade. (R. at 64.) The plaintiff has past relevant work as a millwright, a pipefitter, and a set up person. (R. at 21.)

  The plaintiff protectively filed an application for DIB and SSI on July 14, 2008. (R. at 15.) His applications were denied initially and on reconsideration. *Id.* After a hearing

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

before an ALJ on April 13, 2010, the ALJ issued a decision on June 10, 2010, in which he found that the plaintiff was not disabled. (R. at 15-23.) The Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.
>
> (2)     The claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: status post stroke with left hand injury and a seizure disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is noted to be right handed and as the result of a stroke has no grip in his left hand, but to be capable of steady work[.] The claimant is further noted to suffer from seizures as well as hypertension, and high cholesterol which cause no limitation. The claimant is restricted from working in the sun or heat, but has no problem with walking and standing. The claimant is noted to have 1 seizure every 6 months and is accordingly limited to no exposure to dangerous equipment and heights.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)     The claimant was born on July 13, 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

2

>(8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(I). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that (1) the ALJ failed to resolve a conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles; (2) the ALJ failed to properly assess his Residual Functional Capacity ("RFC"); and (3) the case should be remanded for consideration of new and material evidence.

The Court will address each alleged error in turn.

### I.    CONFLICT WITH THE DICTIONARY OF OCCUPATIONAL TITLES

The plaintiff first argues that the ALJ erred because the Vocational Expert's (VE) testimony was not consistent with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to elicit a reasonable explanation for the inconsistencies. The VE testified that someone of the plaintiff's age, education, and work experience, with the limitations the ALJ ultimately included in the plaintiff's RFC, could perform paint-spray inspector (DOT 741.687-010) and packing-line worker (DOT 753.687-038). (R. at 38.)

The plaintiff emphasizes that the Administrative Law Judge's hypothetical question to the vocational expert, regarding the plaintiff's limitations, included the following: "He has no grip in that hand [left], however, he could steady work with that." (R. at 37-38.) Indeed, the plaintiff's RFC provides that he has "no grip in [the left] hand." (R. at 19.) The plaintiff complains, however, that this limitation is in conflict with the respective DOT descriptions of the jobs identified by the VE.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT. The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT. *See* SSR 00-4p. The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work. *See id.* A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

It is undisputed between the parties that the jobs identified by the VE require "constant handling and frequent fingering, pursuant to the DOT." (Def. Brief at 12; Pl. Brief at 13-15); *see also* 1 DICTIONARY OF OCCUPATIONAL TITLES, paint-spray inspector, occupational code 741.687–010 (4th ed. rev.1991), available at 1991 WL 680249; 1 DICTIONARY OF OCCUPATIONAL TITLES, packing-line worker, occupational code 753.687–038 (4th ed. rev.1991), *available at* 1991 WL 680354. The defendant, however, disagrees that such a requirement means use of *both* hands.

6

It is true that the relevant job descriptions do not expressly say anything about the use of both hands. But, even a sampling of their text implies such an apparent demand:

> Performs any combination of following tasks as member of conveyor line crew to finish and pack plastic or rubber footwear: Sorts and mates pairs and places them on conveyor. Opens or closes buckles, snaps fasteners together, inserts laces in eyelets, and ties loops (frogs) around buttons. Counts and tallies production or records on counter. Wraps pair in tissue, places them in shoe box, and packs boxes in cartons. Places rejects in boxes or racks for repair or mating.

1 DICTIONARY OF OCCUPATIONAL TITLES, packing-line worker, occupational code 753.687–038 (4th ed. rev.1991), *available at* 1991 WL 680354.  As the plaintiff argues, opening buckets, buckling, snapping, and lacing eyelets, would all seem to require a collective dexterity, between both hands, more than what merely one able hand and one steadying hand can provide. The ALJ and the VE had no conversation about it. The Court would say that, in the least, the DOT descriptions on their face pose something very much related to an apparent inconsistency, if not an actual one, such that some additional inquiry and explanation were necessary. The ALJ did not even make the common query as to whether, in general, the VE's testimony was consistent with the DOT, much less a more specific investigation as to the harmony between has testimony and these two job descriptions, precisely.  (R. at 37-39.)  The defendant has not offered any additional argument in defense.

Without much reservation, the Court recommends remand.

**II.     Residual Functional Capacity**

The plaintiff also alleges various errors in the ALJ's assessment of his Residual Functional Capacity ("RFC").  The Court will consider them respectively.

In general, the "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p at *1.  "To determine the claimant's RFC, the ALJ must consider the

7

relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

SSR 96-8p provides that the assessment of residual functional capacity must be based on all of the relevant evidence, including all allegations of physical and mental limitations or restrictions. *See* SSR 96-8p.  When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. *See id.*  However, the ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence. *See id.* When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity and no information is found in the record that such a limitation or restriction exists, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity. *See id.*

The plaintiff first contends that the ALJ did not properly consider certain exertional limitations, including the effect of lower extremity problems on his ability to sit. Specifically, the plaintiff testified, "[W]ell I can sit down fine for, you know, several hours but I don't sit down for over three or four hours at a time. Then I have to lay down and stretch out." (R. at 69.) Both non-examining state agency physicians indicated that the plaintiff could sit for about 6 hours in an 8-hour day. (R. at 271, 282.) The ALJ indicated that he gave these medical opinions some weight. (R. at 20.)    But, the plaintiff complains that he did not indicate exactly which limitations he credited and, more importantly, how many hours a day he believed the plaintiff could sit.

But, the plainest reading of the decision is that the ALJ simply found no sitting restriction at all.  He did not include one in the RFC, obviously.  (R. at 19.)  In fact, the plaintiff quotes the ALJ's rejection of the plaintiff's testimony as to sitting and the additional conclusion that "physical examinations revealed no problems with the claimant's lower

8

extremities . . . ." (R. at 20.) This is the functional analysis, which the plaintiff implies on some level, is missing. But, it is not. Thus, there is no error in the narrative, itself.

But, the plaintiff is also making a substantive challenge – that the analysis is wrong. To that end, the plaintiff cites the following evidence. The plaintiff reported to the emergency room initially on July 2008; his symptoms included left leg numbness. (R at 189-222.) On November 11, 2008, the plaintiff complained to his primary care physician of burning in his legs from his hips to his knees. (R. at 394.)

Additionally, in records submitted to the Appeals Council after the ALJ's decision, the plaintiff's lower extremity complaints were significantly more abundant. For example, the plaintiff had an EMG and nerve conduction study on September 15, 2010, for continued left-sided numbness and tingling in his left arm and leg. (R. at 504-509.) On November 3, 2010, Dr. Vincent Slater evaluated the plaintiff for left leg pain. (R. at 468-472.) Then, on December 15, 2010, Dr. Carol Kooistra evaluated the plaintiff for continued difficulties from his stroke, in July 2008, including left-sided strength, coordination, and numbness. (R. at 488-89.) The plaintiff reported that these difficulties caused him to have occasional falls. *Id.* Motor examination showed increased tone in the left upper and left lower extremities; 4+/5 weakness of the left arm and leg; slowed fine motor, rapid alternating, and foot tapping on the left; brisker reflexes on the left with left ex-tensor response; and, reduced stride length on the left with mild circumduction and reduced left arm swing. *Id.* Dr. Kooistra indicated that the plaintiff was mildly unstable on turns, and his tan-dem gait was moderately affected. *Id.* Dr. Kooistra's diagnosis was late effect CVA, hemiplegia. *Id.* On April 4, 2010, Dr. Cheng evaluated the plaintiff for complaints of a burning sensation on his anterior thighs after he stands for about an hour. Physical examination showed residual left-sided weakness, worse in the upper extremity. (R. at 498-501.)

Much of this evidence, of course, implicates an additional objection of the plaintiff that the Appeals Council failed to remand for consideration of some of this after-acquired evidence. The Court would resolve both issues, here.

Certainly, the new evidence, not before the ALJ originally, appears to have some tendency to support the plaintiff's testimony and other evidence of record, that the plaintiff may have indeed suffered some limitation in his ability to sit due to lower extremity problems. The ALJ might have indeed concluded differently had Drs. Slater and Kooistra's records before him. *See Meyer v. Astrue*, 662 F.2d 700 (4th Cir. 2011); *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993).

The defendant's only response is that the evidence does not relate to the relevant time period considered by the ALJ." (Def. Brief at 14.) It is true that "an ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be "reflective of a possible earlier and progressive degeneration." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 (4th Cir. 2012). But, Dr. Kooistra's narrative statement expressly states that the plaintiff was "referred for difficulties dating to July 2008 . . . ." (R. at 488.) It is reasonable to view the evidence as related to the relevant period.

Accordingly, the Court would also recommend remand for consideration of new evidence related to the plaintiff's alleged lower extremity problems and for reevalution of what additional exertional limitations should be included in the plaintiff's RFC, if any. The Court would not specifically recommend remand for consideration of Ms. Melissa Suddeth's opinion letter, dated September 27, 2010. (R. at 185.) That after-acquired evidence relates to the plaintiff's left upper extremity problems, already acknowledged and incorporated by the ALJ fully. To the extent Suddeth's letter, however, has some material bolstering impact on consideration of Dr. Kooistra's opinion, as the plaintiff implies, the Court would not constrain the ALJ's review of it.

10

The plaintiff also complains that the ALJ did not consider the effects of fatigue on his RFC. The plaintiff testified that he suffers from fatigue. (R. at 69.) He stated that he gets "run down." *Id*. He testified that he takes frequent breaks throughout the day and "usually take[s] a two-hour nap or something during the day." *Id*. The ALJ acknowledged this testimony stating, "The claimant further reported that he takes several naps for 1½ - 2 hours during the day due to chronic fatigue." (R. at 20.) But, the plaintiff argues that the ALJ did not, in fact, include any associated limitation in the RFC. Importantly, the VE testified that fatigue necessitating the ability to lie down for an hour several times a day would eliminate any competitive employment the plaintiff could perform. (R. at 39.)

As far as the Court can tell, the defendant has made no rebuttal. (See Def. Brief at 7-11.) For the defendant's abdication and the liklihood that the case will be remanded for other considerations, the ALJ should also revisit whether he has properly accounted for the plaintiff's post-stroke fatigue.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore ,RECOMMENDED, for the foregoing reason, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS<br>
UNITED STATES MAGISTRATE JUDGE

July 26, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).